STATE OF MISSOURI ex rel. ENDEAVOR MIN-
ING & INVESTMENT COMPANY, Respondent,
v. WEBB CITY & CARTERVILLE FOUNDRY
& MACHINE WORKS and F. B. LOOMIS, Ap-
pellants.

**Springfield Court of Appeals, November 10, 1910.**

1. **ATTACHMENT: Interpleader: Admissions: Final Adjudica-
tion.** When the bill of exceptions shows an admission in writ-
ing by the appellant, to the effect that the appellant in an
interpleader suit originating in a justice court failed to prose-
cute its appeal to the circuit court as required by law, and
said judgment was afterwards affirmed by the circuit court and
became final. *Held,* that this admission was binding upon ap-
pellant, and in a suit on the attachment bond there was no
merit in his contention that there had been no final adjudication
of the interpleader case.

2. ————: **Suit on Bond: Damages: Sufficiency of Evidence.** In
a suit on an attachment bond, the plaintiff claimed damages
for the wrongful attachment of a boiler and pump belonging to
plaintiff. It was claimed that by attaching the pump and boiler
plaintiff was unable to operate its mine, and the water flooded
the mine. *Held,* that this item of damage should be disallowed
for the reason that the evidence was not sufficient to show
that the attachment of the boiler and pump stopped the op-
eration of the mine, nor that the pump was in a condition to
handle the water; but on the contrary that plaintiff's testi-
mony was to the effect that the pump was out of repair and
unable to handle the water.

Appeal from Jasper Circuit Court.—*Hon. David E.
Blair,* Judge.

AFFIRMED.

*L. E. Bates* for appellants.

*E. W. Blair* for respondent.

GRAY, J.—This is an action by the respondent
against the appellants on an attachment bond. On
June 10, 1909, the appellant, the Webb City & Carter-

ville Foundry & Machine Works, commenced a suit by attachment before a justice of the peace, in Jasper county, against the Prudential Mining Company. The statutory affidavit and bond were filed and the appellant, Loomis, signed the attachment bond as surety. The writ of attachment was issued and the constable seized certain mining machinery situated on a mining lease owned by the respondent. Included in the machinery attached was a boiler and pump used by the relator in pumping the water out of its mine. The relator filed an interplea, and on trial before the justice, was successful in obtaining a judgment. The cause was appealed to the circuit court, and on motion of the relator, the judgment was affirmed.

The appellants contend that at the time this suit was commenced, there had not been a final adjudication of the interpleader case. There is contained in the bill of exceptions an admission in writing relating thereto, as follows: "That the said appellant failed to prosecute its said appeal as required by law, and thereafter the judgment of the said justice of the peace was affirmed by the circuit court and became final, as alleged in plaintiff's petition." The appellants are bound by that admission.

In the plaintiff's petition are items of alleged damages in the sum of $205, including attorneys' fees, expenses, etc. The respondent obtained a verdict on trial in the circuit court before a jury in the sum of $185. In the items making up respondent's claim in this case, the following is found: "The said steam boiler was being used in connection with plaintiff's Lead & Zinc Mine, and its seizure stopped the pumping of water from said mine and caused water to flood its mine, damaging the water line and stopping its mining operations for a period of four days, to its damage in the sum of seventy-five dollars."

The appellants claim there is no testimony authorizing a verdict for any part of this item. This is

the only remaining point in the case to be determined. The testimony shows that the pump in question was near the bottom of the shaft on the relator's lease; that the same had not been operated from about the 10th day of April, 1909, until after the first of June of that year; that on or about the 10th of April, 1909, another company was operating the property and was making some repairs on the pump. At that time that company was using gas for fuel and for some reason the gas company refused to furnish gas, and the company ceased its operations, and the pump was left in the ground without the repairs being made. Sometime after the relator went into the ground and found the water about "boot-top deep" and near the top of the pump, and the pump was in bad condition, and while it could be operated, there is no testimony that the pump was sufficient to handle the water or to keep it from rising in the mine. On the 10th of June the attachment suit was commenced, and about the 15th of June, arrangements were made by which the relator was permitted to take possession of the machinery and operate it. The evidence shows at that time the water was over the pump so that it could not be successfully operated.

The relator offered as a witness a Mr. Kelley, who went into the ground after the property had been re-delivered to the relator, and examined the pump and repaired it. He testified that when he went into the ground the pump was in such bad condition that it would not handle the water, and that the water was gradually gaining on the pump. The witness testified that the old company left the pump in such bad condition that the relator could not do much with it, and had it not been for that condition, it would have pumped all right.

The physical facts of the case are against the relator. The evidence shows no rainfall during the time

151 App—3

the attachment was on the property, and that from the 10th of April until the first of June, the pump had not been operated and the water had only come up about two feet in the mine, but as soon as the attachment was run, and during the four or five days it was on the property, the water flooded in the mine to a greater depth than it had during the two months previous thereto. There is no testimony explaining that phenominal situation.

To prove the damages sued for in this item, it was necessary for the relator to prove that on account of the attachment, it was unable to operate its machinery, and on account thereof, the water flooded its mine. In other words, the burden was on the relator to show that the attachment stopped the operation of the pump, and on account thereof the mine was flooded. The testimony simply shows that a few days before the levy was made, the water was about two feet deep in the shaft, and after the attachment, it was about four feet deep. There is no testimony that the pump was in a condition to handle the water, or that the water could have been kept down by the operation of the pump. On the contrary, the relator's testimony is all to the effect that the pump was out of repair, and was absolutely unable to handle the water.

The judgment is excessive to the amount of that item, and will be reversed and the cause remanded, unless the relator will within ten days, enter a remittitur in the sum of seventy-five dollars. Whereupon the judgment will be affirmed. All concur.